**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Anthony CHIAVOLA, Jr.,**
**Defendant-Appellant.**

**No. 83–3005.**

United States Court of Appeals,
Seventh Circuit.

Argued June 4, 1984.

Decided Sept. 21, 1984.

Rehearing and Rehearing En Banc
Denied Nov. 5, 1984.

James R. Ferguson, Asst. U.S. Atty., Dan K. Webb, U.S. Atty., Chicago, Ill., for plaintiff-appellee.

David S. Mejia, Law Offices of Patrick A. Tuite, Ltd., Chicago, Ill., for defendant-appellant.

Before BAUER, EDWARDS,[*] and ESCHBACH, Circuit Judges.

BAUER, Circuit Judge.

Defendant Anthony Chiavola appeals his conviction on two counts of conspiracy and extortion under 18 U.S.C. § 1951 (1948). He contends that the government's use of evidence obtained from a telephone "overhear," use of co-conspirator testimony, and improper cross-examination each require reversal. We affirm.

[*] The Honorable George Clifton Edwards, Jr., Judge of the United States Court of Appeals for the Sixth Circuit, is sitting by designation.

The defendant, a Chicago Police Department patrolman, was arrested along with three other men, Joseph Sleyano, Douglas Eckhardt, and Nick Addante, in connection with the theft of several gems from Mehul Shah. Sleyano and Eckhardt set Shah up for the theft by feigning interest in purchasing gems for a relative's jewelry store. Those two men lured Shah to a downtown Chicago restaurant on June 17, 1982, where Shah, while walking with a friend and Eckhardt toward Shah's car, was accosted by two different men posing as police officers. The men claimed that Shah's car was reported as a stolen vehicle. Shah produced his vehicle registration, but the men nevertheless ordered Shah to empty his pockets and fled with the contents, including the gems.

When the police arrived minutes later, they arrested Eckhardt, whose act as a crime victim apparently was not convincing. After his arrest, Eckhardt implicated Sleyano in the robbery. Eckhardt was indicted, but later pleaded guilty and agreed to testify against his co-conspirators. Sleyano was indicted, tried by a jury, and convicted. His appeal is pending before this court.

Shah implicated the defendant in the robbery as one of the men posing as a police officer on June 18 when he picked the defendant's picture out of a photograph album. In addition, the police linked the defendant to the crime when they discovered that Sleyano was carrying a business card with the name "Tony" hand-printed on it together with a telephone number later identified as the defendant's unpublished number. The police had Sleyano dial that telephone number, and Detective Paul Carroll listened to the conversation between Sleyano and the defendant through the same earpiece Sleyano was using. The defendant made incriminating remarks during the conversation and was arrested immediately thereafter. Shah later picked him out of a line-up at the station house.

The government's case at trial rested principally on testimony from victim Shah, co-conspirator Eckhardt, and Detective Carroll, including his testimony regarding the contents of the telephone conversation. The defendant asserted as an alibi defense that he was with family and friends the entire day of June 17. The jury convicted the defendant on both counts after a four-day trial and the court sentenced him to concurrent terms of three years imprisonment on each count.

■ The defendant argues that the evidence obtained from the telephone call between Sleyano and the defendant which Detective Carroll overheard should have been suppressed because it was obtained in violation of Sleyano's rights. Generally, individuals not personally the victims of illegal government activity cannot assert the constitutional rights of others. *United States ex rel. Cunningham v. DeRobertis*, 719 F.2d 892, 895–96 (7th Cir.1983). The defendant nonetheless argues that the violation of Sleyano's rights rose to the level of a violation of the defendant's fifth amendment rights. Alternatively, the defendant urges us to exercise our supervisory power to suppress the evidence, which the police allegedly obtained by beating Sleyano.

■ The defendant correctly states that a violation of another person's fifth amendment rights may rise to the level of a violation of his rights to a fair trial. *See Cunningham*, 719 F.2d at 896; *Bradford v. Johnson*, 354 F.Supp. 1331 (E.D.Mich. 1972), *aff'd*, 476 F.2d 66 (6th Cir.1973). Due process is implicated when the government seeks a conviction through use of evidence obtained by extreme coercion or torture. The issue is whether the government's investigation methods resulted in a fundamentally unfair trial. We believe that the defendant here received a fair trial.

■ The defendant's claims that his trial was fundamentally unfair because alleged police misconduct forced Sleyano to participate in the telephone conversation fails under the circumstances in this case. Unlike the situations presented in *Cunningham*, *LaFrance v. Bohlinger*, 499 F.2d 29 (1st

Cir.), *cert. denied*, 419 U.S. 1080, 95 S.Ct. 669, 42 L.Ed.2d 674 (1974), and *Bradford*, the alleged misconduct here did not directly produce the evidence to which the defendant objects. The defendant complains that introduction of the substance of his telephone conversation was unfair because police coerced Sleyano into placing the call. But the police discovered the business card with the name "Tony" and the defendant's telephone number hand-printed on it in the normal course of their investigation. That evidence was not the product of misconduct. The defendant cannot claim that police discovered him solely as a result of mistreatment of Sleyano. He also cannot claim that his incriminating statements were the direct fruit of coercion. All the defendant can argue is that Sleyano may have dialed the telephone and spoken into it against his will. This is fundamentally different from a claim that extreme police misconduct toward a suspect led to a confession or a statement implicating, and leading to the conviction of, an accomplice.

In *Bradford*, for example, police brutally abused a suspect until he named his accomplice. The abuse continued, and the suspect testified against his accomplice at trial in state court under the threat of further beatings. The accomplice was convicted. A federal district court granted the accomplice's petition for a writ of habeas corpus, ruling that use of the suspect's coerced testimony was fundamentally unfair to the accomplice. 354 F.Supp. at 1335–38. Similarly, the *LaFrance* court recognized that due process requires exclusion of confessions or statements wrung by coercion out of a witness. 499 F.2d 34–35. In both cases, the government used at trial incriminating evidence forcefully extracted from witnesses. In the case before us, the defendant incriminated himself when he spoke into the telephone. The alleged police misconduct did not infect those remarks.

All forms of police misconduct must be condemned. Use of unjustified force by those charged with serving the public tears harder at the fabric of society than almost any other form of abuse of official powers. In this case, evidence circumstantial to the defendant's guilt or innocence revealed that the police may have used such reprehensible tactics to gain the cooperation of certain suspects. Such behavior undermines the effectiveness of law enforcement efforts over time. The alleged misconduct only narrowly escapes our review here because the defendant incriminated himself voluntarily. His trial thus was not fundamentally unfair.

■ We also decline to exercise our supervisory power to upset the defendant's conviction. The Supreme Court's decision in *United States v. Payner*, 447 U.S. 727, 100 S.Ct. 2439, 65 L.Ed.2d 468 (1980), guides our analysis. In *Payner*, the Court concluded that the supervisory power does not authorize a federal court to suppress evidence on the ground that it was seized unlawfully from a third party not before the court. Instead, established constitutional doctrine applies to resolve the dispute. Similarly, constitutional doctrine applies here. We have determined that the defendant's fifth amendment right to a fair trial was not violated. The interest in deterring illegal police conduct is outweighed by the interest in this case of furnishing the jury with all relevant evidence; the defendant cannot shield himself with the constitutional rights of another. 447 U.S. at 735–37 & nn. 8–9, 2446–479 nn. 8–9.[1] The supervisory power is reserved to protect the integrity of the federal courts. Because the evidence presented at trial was not seized in violation of the defendant's rights or by defrauding the court, exercise of the supervisory power in this case is inappropriate.

■ The defendant offers two other arguments against use of the telephone conversation at trial. First, he contends that

---

1. This case differs from *United States v. Cortina*, 630 F.2d 1207 (7th Cir.1980), cited by the defendant, in which this court exercised its supervisory power to suppress evidence that was seized in violation of the defendant's own rights and obtained only by defrauding the court.

his fourth amendment rights were violated because Sleyano did not voluntarily cooperate with Detective Carroll. This argument fails because the defendant's constitutionally justifiable expectations of privacy do not depend in this case on whether Sleyano's consent to Detective Carroll's "overhear" was voluntary. Sleyano placed the telephone call to the defendant in the presence of Detective Carroll. Sleyano also held the telephone earpiece so that Detective Carroll could hear the conversation. The defendant could not reasonably expect, when speaking to his co-conspirator, that no one was standing with Sleyano listening to the words he spoke. This is not a search implicating the fourth amendment, and Sleyano's state of mind thus is not material. *See generally* Alschuler, *Interpersonal Privacy and the Fourth Amendment*, 4 N.I.U.L.Rev. 1, 33–44, 50–57 (1983) (recognizing current application of fourth amendment that "[t]he invasion of a suspect's privacy is unaffected by whether the agent who accomplishes this invasion is a public-spirited volunteer or a person impressed into police service by coercive governmental threats," but urging a different application). *See also United States v. White*, 401 U.S. 745, 752, 91 S.Ct. 1122, 1126, 28 L.Ed.2d 453 (1971) (plurality opinion) ("[O]ne contemplating illegal activities must realize and risk that his companions may be reporting to the police."). The defendant's fourth amendment rights were not violated.

■ Second, the defendant claims that Detective Carroll's "overhear" violated Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2520 (1978), as a warrantless interception of a telephone conversation. This argument raises a simple but important point. Detective Carroll's act of overhear-

ing the telephone conversation between Sleyano and the defendant did not constitute an "interception" within the definition of 18 U.S.C. § 2510(4). Section 2510(4) defines an "intercept" as "the aural acquisition of the contents of any wire or oral communication through the use of any electronic, mechanical, or other device." Section 2510(5) defines "device" as "any device or apparatus which can be used to intercept a wire or oral communication other than ... any telephone ... being used by [a] subscriber or user in the ordinary course of its business." Detective Carroll did not use a "device" within the meaning of this section. Instead he merely listened on the same earpiece as one of the participants in the conversation. A single telephone was used in its ordinary fashion to receive a call. An intercepting device is defined clearly to include apparatuses capable of tapping a telephone or wire or otherwise seizing a communication and to exclude the mere use of an ordinary telephone in its ordinary manner to place or receive a call. This case does not involve the use of any extension telephone as discussed in *United States v. Harpel*, 493 F.2d 346 (10th Cir. 1974), cited as authority by the defendant. Instead, it involves the minimum number of telephones needed to complete a communication. When only two telephones are used, one to place the call and one to receive the call, the call has not been intercepted within the definition of Section 2510. For this reason, Detective Carroll's act of listening on the same earpiece as Sleyano to the defendant's conversation did not violate Title III.[2] See *Briggs v. American Air Filter Co., Inc.*, 630 F.2d 414 (5th Cir.1980), for a discussion of the "ordinary course of business" exception.

■ The defendant next argues that the admission of Eckhardt's testimony relating

---

**2.** This interpretation is consistent with the legislative history of the crime control act. Congress was concerned both with the danger presented by the scientific and technological developments in electronic surveillance techniques and the need to protect law enforcement officials' ability to combat organized crime. S.Rep. No. 1097, 90th Cong., 2d Sess., *reprinted in* 1968 U.S.Code Cong. & Ad.News 2112, 2153–63. The absence

of any device beyond the single telephone used to make the call places this case outside the principal concerns addressed by the crime control act. The legislative history of the act is discussed in *Briggs v. American Air Filter Co., Inc.*, 630 F.2d 414 (5th Cir.1980), and *United States v. Paul*, 614 F.2d 115 (6th Cir.), *cert. denied*, 446 U.S. 941, 100 S.Ct. 2165, 64 L.Ed.2d 796 (1980).

what Sleyano told him about the defendant violated the defendant's sixth amendment right to be confronted with the witnesses against him. The testimony was admitted under Federal Rule of Evidence 801(d)(2)(E) after a hearing in the district court. This circuit has long held that the confrontation clause presents no bar to the use of extra-judicial coconspirator statements admissible under Rule 801(d)(2)(E), *see United States v. Xheka*, 704 F.2d 974, 987 n. 7 (7th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 486, 78 L.Ed.2d 682 (1983), and under the circumstances of this case we decline to depart from our previous rulings.

■ Finally, the defendant claims that the prosecutors improperly cross-examined his alibi witnesses in their attempt to show that the witnesses were not telling the truth. The defendant argues that the prosecutors' questions were baseless and therefore improper because no evidence existed to support the conclusion that the witnesses were lying. This argument lacks merit. The government, in its case-in-chief, presented evidence to link the defendant to the robbery, which occurred at 6:00 p.m. The witnesses for the defense stated that the defendant was with them continuously throughout the afternoon and evening. A truism applicable here is that one person cannot be in two places at the same time. Thus, either the prosecution's witnesses or the alibi witnesses presented incorrect testimony. It was proper for the prosecutors to explore the possibility that the alibi witnesses were lying, which they did by asking non-leading questions, just as it was proper for the defense lawyers to challenge the truthfulness and reliability of the prosecution's witnesses, which they did. The

record indicates that the prosecutors did not imply the existence of facts not in the record and did not harass the witnesses. This case thus differs significantly from cases in which the prosecutor suggests the existence of threats against witnesses or prior incriminating statements uttered by a witness when no evidence supports those suggestions. *See, e.g., United States v. Meeker*, 558 F.2d 387 (7th Cir.1977). The questions during cross-examination of the alibi witnesses and the rebuttal evidence were proper.[3]

AFFIRMED.

---

3. The defendant's arguments regarding the examination of Kathy Okrasinski by the prosecutors as part of their rebuttal do not merit attention in the text. The defendant misconstrues Federal Rule of Criminal Procedure 12.1(f). Rule 12.1(f) applies when a defendant withdraws his intention to rely on an alibi defense. That did not occur here; the defendant relied on an alibi at trial. The prosecutors' questions and Okrasinski's answers were relevant as rebuttal to the testimony of the defendant's alibi witnesses.