**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jimmy Lee CHURCH, Defendant–
Appellant.**

No. 91–2679.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 19, 1992.

Decided Aug. 12, 1992.

David H. Miller, Asst. U.S. Atty. (argued), Office of the U.S. Atty., Fort Wayne, Ind., for plaintiff-appellee.

Frank J. Gray (argued), Beckman, Lawson, Sandler, Snyder & Federoff, Fort Wayne, Ind., James P. Casey, Bowers, Harrison, Kent & Miller, Evansville, Ind., James S. Stephenson, Kenneth Collier–Magar, Stephenson & Kurnik, Indianapolis, Ind., and Francis H. Lueken, Ferdinand, Ind., for defendants-appellants.

Before BAUER, Chief Judge, CUMMINGS, Circuit Judge, and VAN SICKLE, Senior District Judge.*

BRUCE M. VAN SICKLE, Senior District Judge.

Jimmy Lee Church and two co-defendants, Joe Surry and Andre Spence, were indicted on various drug and firearm charges. Following a joint trial, Church was convicted of the following: (1) Count Three—conspiracy to distribute more than

* Hon. Bruce M. Van Sickle of the District of North Dakota, sitting by designation.

five grams of cocaine base, crack, in violation of 21 U.S.C. §§ 846 and 841(a)(1); (2) Count Four—possession with intent to distribute more than five grams of cocaine base, crack, in violation of 21 U.S.C. § 841(a)(1); (3) Count Five—opening or maintaining a place at 3618 S. Barr Street, Fort Wayne, Indiana, for the purpose of distributing cocaine base, crack, in violation of 21 U.S.C. § 856(a)(1); (4) Count Six—opening or maintaining a place at 530 E. Leith Street, Fort Wayne, Indiana, for the purpose of distributing cocaine base, crack, in violation of 21 U.S.C. § 856(a)(1); and (5) Count Seven—conspiracy to open or maintain a place at 244 E. Suttenfield Street, Fort Wayne, Indiana, for the purpose of distributing cocaine base, crack, in violation of 21 U.S.C. §§ 846 and 856(a)(1). Thereafter, Church was sentenced to a total of 108 months imprisonment. On appeal, Church contends that the district court erred in: (1) denying his motion to suppress, (2) denying his motion for judgment of acquittal, (3) failing to merge two counts, (4) refusing to give an instruction, and (5) failing to make certain evidentiary rulings. We affirm.

## I. BACKGROUND

During the fall of 1990, the police in Allen County, Indiana conducted an undercover narcotics investigation. Special Agent Cronin of the Bureau of Alcohol, Tobacco and Firearms was assigned to the Allen County Drug Task Force to investigate illegal narcotics distribution cases where firearms were used. As part of the investigation, a confidential informant made a number of drug buys. The confidential informant observed Church and Surry selling crack from 3618 S. Barr Street. The confidential informant also purchased crack from Church at the Barr Street address. Subsequently, Church moved to 530 E. Leith Street. The confidential informant then purchased crack from Church at the Leith Street address. Finally, the confidential informant purchased crack from Spence at 244 E. Suttenfield Street.

As a result of the investigation, Agent Cronin prepared affidavits for the issuance of three arrest warrants and two search warrants. On December 5, 1990, a magistrate authorized the issuance of the warrants and police S.W.A.T. teams executed the search warrants at 530 E. Leith Street and 244 E. Suttenfield Street. At the Leith Street address, the police, after announcing their presence, came through the front door with a battering ram. Church and Spence were at this address. The police ordered Church to drop to the floor and placed plastic handcuffs (flex cuffs) on him. The police then read Church his *Miranda* rights twice. Church complained that the flex cuffs were too tight and so they were cut off. Agent Cronin then questioned Church for approximately twenty minutes during which time Church made incriminating statements.

The search warrant for the Leith Street address authorized a search for "United States currency, controlled substances, books and records, weapons, and a safe in the attic." Upon questioning, Church admitted that he owned a safe and provided the combination. Police recovered from the safe $355 in United States currency and a plastic pill bottle containing what was later identified as crack. Approximately eighty rocks of crack were found in the pill bottle. The police also recovered $583 in United States currency from Church's shirt pocket, a small television set and some shotgun shells.

## II. ANALYSIS

### A. *Motion to Suppress*

Church brought a motion to suppress his statements and physical evidence obtained pursuant to the search warrant. Following an evidentiary hearing, the district court denied the motion. *See United States v. Church*, No. FCR 90–25 (N.D.Ind. Mar. 26, 1991) (order denying motion to suppress). The district court's factual determinations made in denying Church's motion to suppress will be accepted unless clearly erroneous. *United States v. Carter*, 910 F.2d 1524, 1529 (7th Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 1628, 113 L.Ed.2d 724 (1991). Whether Church's con-

fession was voluntary "is a question of law, and as such is subject to *de novo* review." *Id.*

■ The government must prove by a preponderance of the evidence that the confession was voluntary. *Lego v. Twomey,* 404 U.S. 477, 489, 92 S.Ct. 619, 626, 30 L.Ed.2d 618 (1972). This entails a showing that Church's confession was "the product of a rational intellect and a free will." *Blackburn v. Alabama,* 361 U.S. 199, 208, 80 S.Ct. 274, 280, 4 L.Ed.2d 242 (1960). The factors to be considered include the age of Church, his education, the nature of the questioning, the use of physical punishment, and the determination of whether he was read his rights. *See Schneckloth v. Bustamonte,* 412 U.S. 218, 226, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973).

■ Church contends that his statements were involuntary because the arrest scene was coercive. Church states that he was subjected to physical pain and psychological pressure. As a result, he was in a "dazed" and "confused" state of mind. Apparently, the physical pain complained of was the flex cuffs. However, after Church complained that the flex cuffs were too tight, they were cut off. Only after the flex cuffs were removed was Church questioned. Further, the district court disbelieved Church's testimony concerning his alleged physical injury and found that Church's wrists were not cut by the handcuffs.

The psychological pressure complained of was the atmosphere of the arrest scene. An armed S.W.A.T. team had stormed into the house and ordered everyone to the floor. The numerous law enforcement personnel created noise and confusion. Also, Church claims that while lying on the kitchen floor, he witnessed the police kicking codefendant Spence. However, as the district court found, Church was not threatened in any manner during his detention and interrogation, nor was he questioned by anyone other than Agent Cronin.

Church was twenty-one years old at the time of his arrest. He had a high school education and could read and write. Further, Church was read his constitutional rights twice. Finally, the interrogation lasted only twenty minutes. After examining these circumstances, the district court concluded that "[c]learly, there is no evidence before the court that would suggest that Church's statements should be suppressed." *Church,* slip op. at 7. We agree.

1. Search Warrant

■ Church also claims that the search warrant issued for the Leith Street address was defective. In *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the Supreme Court articulated the role of the magistrate and the reviewing court as follows:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed.

462 U.S. at 238, 103 S.Ct. at 2332 (quoting *Jones v. United States,* 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960)). *See also, United States v. McKinney,* 919 F.2d 405, 408 (7th Cir.1990); *United States v. Malin,* 908 F.2d 163, 165 (7th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 534, 112 L.Ed.2d 544 (1990).

Specifically, Church objects to the seizure of the safe in the attic. Church asserts that the only information the police had concerning the safe and its location was that given to the confidential informant by an unknown associate and that this information is insufficient to establish probable cause. However, Agent Cronin's affidavit detailed the reliability of the confidential informant. For example, the magistrate knew that the confidential informant had on five occasions purchased crack cocaine from Church, including a purchase at the Leith Street address. The affidavit

also states that the confidential informant observed a 16 gauge sawed-off shotgun and approximately 100 rocks of crack at the Leith Street address. Finally, the affiant, Agent Cronin, stated that based upon three and one-half years of narcotic investigations, he believed that a search of the Leith Street address would yield controlled substances, weapons, currency, and records evidencing armed narcotic trafficking.

The district court, reviewing this information contained in Agent Cronin's affidavit, determined that there was sufficient probable cause for the magistrate to issue the search warrant.

> Since Agent Cronin received his tip from a trusted informant who had proved himself reliable in the past, there was no reason for Agent Cronin or Magistrate Cosbey to disbelieve the informant's source of information. Thus, the court finds that there was sufficient probable cause for Magistrate Cosbey to issue a warrant for the search and seizure of the safe, especially in light of the fact that it is highly probable that a drug dealer would keep his drugs and cash in a safe in the attic.

*Church,* slip op. at 10. We see no reason to disturb the district court's ruling.

### B. *Insufficiency of Evidence*

■ Church next argues that the district court erred in denying his motion for judgment of acquittal as to Counts Three, Five, Six and Seven. In assessing a claim of insufficiency of the evidence, the test is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). *See also United States v. Lamon,* 930 F.2d 1183, 1190 (7th Cir.1991).

Count Three charged that Church, together with codefendants Spence and Surry, conspired to distribute more than 5 grams of crack cocaine. "The essential elements of conspiracy under section 846 are the existence of an agreement between two or more individuals, with the intent to commit an offense in violation of the Controlled Substances Act." *United States v. Sweeney,* 688 F.2d 1131, 1140 (7th Cir. 1982). Church's claim need not detain us long. Without detailing all of the evidence in the record, we conclude from our review that sufficient evidence exists for a jury to convict Church of Count Three.

Count Seven charged that Church, together with codefendants Spence and Surry, conspired to open or maintain 244 E. Suttenfield Street, Fort Wayne, Indiana for the purpose of distributing crack. Church claims that the evidence is insufficient to sustain the conviction because no one placed him at the Suttenfield Street address. However, it is not necessary that Church have physically been at the Suttenfield Street address. Church's agreement to open or maintain a crackhouse at 244 E. Suttenfield Street is apparent from the record. While purchasing crack at the Suttenfield Street address, Spence told the confidential informant that the place was Church's crackhouse. Also, a small television set that the confidential informant observed at the Suttenfield Street address was recovered at Church's Leith Street address. Finally, at the time of his arrest, Church had in his possession two $20 bills that the confidential informant had used to purchase crack from Spence at the Suttenfield Street address. We conclude from our review of the record that sufficient evidence exists for a jury to convict Church of Count Seven.

#### 1. Crackhouse Statute

■ Church also contends that there is insufficient evidence to convict him of violating the crackhouse statute. The crackhouse statute provides that it shall be unlawful to "knowingly open or maintain any place for the purpose of manufacturing, distributing, or using any controlled substance." 21 U.S.C. § 856(a)(1). To convict Church under section 856(a)(1), the jury had to find that Church (1) knowingly (2) opened or maintained 3618 S. Barr Street (Count Five) and 530 E. Leith Street (Count Six) (3) for the purpose of distributing

**406**

crack. *United States v. Chen,* 913 F.2d 183, 187 (5th Cir.1990).

Church argues that he did not open or maintain these houses *for the purpose* of distributing crack. Rather, the dominate or primary purpose of the residences was for Church to live there. Church lived first at 3618 S. Barr Street, and then in October, 1990, moved to 520 E. Leith Street. Church's argument is that if drug distribution is but one of several uses of a residence, such residence is not within the scope of the statute.

Church points to 244 E. Suttenfield Street, involved in Count Seven, as the typical crackhouse. At the Suttenfield Street address, the confidential informant observed only a kerosene heater, a small battery powered television set, and sleeping bags. Tr. 330. Further, the house did not have any utilities. Tr. 484. Also, the confidential informant had helped put up plastic at the house, apparently for insulation. Tr. 328. In contrast, the Barr Street and the Leith Street addresses did not exhibit the trappings of a crackhouse. Rather, the houses were equipped as residences, with heat, water and electricity. Since the most that can be said about these two houses is that some crack distribution occurred, Church asserts that the evidence is insufficient to establish that these houses are crackhouses.

This circuit has not had occasion to consider the crackhouse statute. However, the Fifth Circuit was confronted with an argument similar to that of Church's.

Binder contends that this evidence is insufficient to convict him under § 856(a)(1). He asserts that the primary "purpose" of the Hearth Street condominium was as Robert's residence and

that Congress intended § 856 to apply only to facilities for which drug trafficking is the sole purpose and not one of several purposes. He contends that any other interpretation would mean that casual drug users risk felony convictions for drug use in their own homes.

Had Congress intended convictions under § 856 to be limited to those who open or maintain facilities having cocaine manufacturing as their sole purpose, it would have said so. Such a narrow construction as Binder suggests would eviscerate the statute, since it is highly unlikely that anyone would openly maintain a place for the purpose of manufacturing and distributing cocaine without some sort of "legitimate" cover—as a residence, a nightclub, a retail business, or a storage barn.

*United States v. Roberts,* 913 F.2d 211, 220 (5th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2264, 114 L.Ed.2d 716 (1991). The question is whether proof of crack distribution, without more, is sufficient to convict Church of opening or maintaining the houses *for the purpose* of distribution.[1] We need not accept in this case Church's assertion that all casual drug users risk violating section 856 for drug use in their own home, because those are not the facts. The Barr Street and the Leith Street addresses did not involve isolated instances of distribution. Rather, the evidence established significant commercial sales. We find that the evidence is sufficient for the jury to convict Church of opening or maintaining crackhouses for the purpose of distribution.

### C. *Double Jeopardy*

■ The Double Jeopardy Clause of the Fifth Amendment provides that no person

---

**1.** Church suggested at oral argument that we analogize to a case by this court construing the Mann Act, 18 U.S.C. § 2421 et seq. Prior to amendment, the Mann Act prohibited the transportation in interstate commerce of any woman "for the purpose" of prostitution. In *United States v. Snow,* 507 F.2d 22 (7th Cir.1974), we stated that the intent to have women engage in prostitution must be a *dominant* purpose for the interstate trip. However, this analogy does little for Church. Even though the adjective dominant was placed on purpose, the court held that

it was not necessary that the sole purpose of the transportation be for prostitution. "Despite the contrary implication suggested by the word 'dominant,' it [prostitution] need not be the most important of defendant's reasons when multiple purposes are present." 507 F.2d at 24. Rather than judicially modify the phrase "for the purpose", we agree that "[t]he meaning of that phrase lies within the common understanding of jurors and needs no further elaboration." *Roberts,* 913 F.2d at 220.

shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The Double Jeopardy Clause affords three protections to a criminal defendant. The first is a protection against a second prosecution for the same offense after acquittal. The second is a protection against a second prosecution for the same offense after conviction. *Jones v. Thomas*, 491 U.S. 376, 380–81, 109 S.Ct. 2522, 2525, 105 L.Ed.2d 322 (1989). Although Church does not clearly articulate his argument, he is concerned with the third protection provided by the Double Jeopardy Clause: the protection against multiple punishments for the same offense. *See North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969).

Church claims, in essence, that the convictions on Counts Three and Seven punish him twice for the same criminal conduct. Count Three of the indictment charged that Church, Surry and Spence conspired to distribute crack from September 6 to December 5, 1990. Count Seven charged that Church, Surry and Spence conspired to open or maintain 244 E. Suttenfield Street for the purpose of distributing crack from December 1 to December 5, 1990. Church argues that since he and his co-defendants had the single criminal objective of distributing crack from any available location between September 6 and December 5, 1990, Count Three must be merged into Count Seven.

The first step is to determine whether Congress intended that each violation be a separate offense. *Garrett v. United States*, 471 U.S. 773, 778, 105 S.Ct. 2407, 2411, 85 L.Ed.2d 764 (1985). The government states that the test set out in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), is to be applied in determining whether Counts Three and Seven merge. In *Blockburger*, the Supreme Court stated that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." 284 U.S. at 304, 52 S.Ct. at 182.

However, the *Blockburger* rule is one of statutory construction. Accordingly, the *Blockburger* rule "is not controlling when the legislative intent is clear from the face of the statute or the legislative history." *Garrett*, 471 U.S. at 779, 105 S.Ct. at 2411 (citing *Missouri v. Hunter*, 459 U.S. 359, 368, 103 S.Ct. 673, 679, 74 L.Ed.2d 535 (1983)).

Church was convicted of conspiracy to violate 21 U.S.C. §§ 841(a)(1) and 856(a)(1). Section 841(a)(1) provides:

(a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

(1) to ... distribute ... a controlled substance.

Section 856(a)(1) provides:

(a) Except as authorized by this title, it shall be unlawful to—

(1) knowingly open or maintain any place for the purpose of manufacturing, distributing, or using any controlled substance.

The plain language of the statute indicates that Congress intended to punish conspiracies to violate section 841(a)(1) separately from conspiracies to violate section 856(a)(1). The effect of development of a crackhouse is to centralize distribution activity and create a special, concentrated burden and danger to a particular community. This problem makes meaningful the separate offense created under 21 U.S.C. §§ 846 and 856(a)(1), and the additional penalty which attaches for that conviction. Also, section 856 focuses on the use of property. Section 856 "goes beyond the proscriptions found in other statutes relating to possession and manufacture [and distribution] of controlled substances and actually criminalizes a particular defendant's use of property." *United States v. Sturmoski*, 971 F.2d 452, 461–62 (10th Cir. 1992).

Congress enacted section 856 as part of the Anti–Drug Abuse Act of 1986, Pub.L. No. 99–570, 100 Stat. 3207, 3207–52. The Senate abstracted section 856 as a provi-

sion that "[o]utlaws operation of houses or buildings, so-called 'crack houses', where 'crack', cocaine and other drugs are manufactured and used." H.R. 5484, 99th Cong., 2d Sess., 132 Cong.Rec. S13779 (daily ed. Sept. 26, 1986). We agree that Congress intended to create a distinct offense, "aimed specifically at criminalizing the use of property for narcotics-related purposes." *Sturmoski*, 971 F.2d at 462. Because we find clear intent that a violation of section 856 is a distinct offense which may be punished separately, the *Blockburger* test does not apply.

However, even if we were to agree with the government and apply the *Blockburger* test, the result is the same. Count Seven required proof of a conspiracy to open or maintain a cocaine distribution center; a crackhouse. Count Three required proof of a conspiracy to distribute crack. Therefore, while Count Three required proof only of a general conspiracy to distribute, Count Seven required proof of a conspiracy to open or maintain the activity at a special address, the Suttenfield Street address. These separate facts to be proved satisfies the *Blockburger* test. *See United States v. Abreu*, 952 F.2d 1458, 1464–65 (1st Cir.), *cert. denied*, — U.S. —, 112 S.Ct. 1695, 118 L.Ed.2d 406 (1992).

### D. *Jury Instruction*

 Church next contends that the district court erred in refusing to give his requested instruction regarding conspiracy. Church is entitled to an instruction on his theory of the case if he proposes a correct statement of the law; his theory is supported by the evidence; his theory of defense is not part of the charge; and the failure to include an instruction on his theory of defense in the jury charge would deny him a fair trial. *United States v. Douglas*, 818 F.2d 1317, 1320–21 (7th Cir. 1987). In determining whether the district court erred, we examine the jury instructions as a whole. *United States v. Briscoe*, 896 F.2d 1476, 1512 (7th Cir.) (quoting *United States v. Bailey*, 859 F.2d 1265, 1277 (7th Cir.1988)), *cert. denied*, — U.S. —, 111 S.Ct. 173, 112 L.Ed.2d 137 (1990). Church requested the following instruction:

If you find from the evidence that Joe Surry did not conspire with Andre Spence or Jimmy Lee Church to commit the crimes alleged and find Joe Surry not guilty of conspiracy, and

If you find from the evidence that Andre Spence did not conspire with Joe Surry or Jimmy Lee Church to commit the crime alleged and find Andre Spence not guilty of conspiracy, and

If you find from the evidence that there are no other possible co-conspirators other than the three (3) defendants charged,

Then you must find the defendant, Jimmy Lee Church, not guilty of conspiracy as well.

The district court refused to give the tendered instruction because, in addition to being "very convaluted [sic] and complicated", the request was covered by the other instructions on conspiracy. Tr. 511–12. Likewise, the government contends that Church's theory of defense was adequately covered by the instructions given.

The jury was instructed on Counts Three and Seven, the conspiracy counts, that the government must prove, *inter alia*, that "two or more persons were members of a concerted agreement." Tr. 691, 698. The jury also was instructed to analyze the evidence as to each defendant and to give each defendant separate consideration. Tr. 681. Thus, Church could not be convicted of conspiracy without the jury finding that at least one other co-defendant was a member of a concerted agreement. In fact, all three defendants were convicted on the conspiracy counts. Since the essential points were covered in the district court's instructions, Church is not entitled to relief. *See United States v. Penson*, 896 F.2d 1087, 1090 (7th Cir.1990) (quoting *United States v. Xheka*, 704 F.2d 974, 987 (7th Cir.1983)).

### E. *Evidentiary Rulings*

#### 1. Hearsay

 Church objects to a hearsay statement made at trial. However, Church failed to object at trial and such failure

constitutes a waiver on appeal. *United States v. Gironda*, 758 F.2d 1201, 1216 (7th Cir.), *cert. denied*, 474 U.S. 1004, 106 S.Ct. 523, 88 L.Ed.2d 456 (1985). Nevertheless, Church argues that the district court committed plain error in allowing the testimony. Fed.R.Crim.P. 52(b). The burden of establishing plain error is heavy. To establish plain error, "there must have been a 'miscarriage of justice.'" *United States v. Smith*, 869 F.2d 348, 356 (7th Cir.1989) (quoting *United States v. Young*, 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985)). The term "miscarriage of justice" implies the Church would have been acquitted absent the error. *Id. See also United States v. Silverstein*, 732 F.2d 1338, 1349 (7th Cir.1984), *cert. denied*, 469 U.S. 1111, 105 S.Ct. 792, 83 L.Ed.2d 785 (1985).

 The confidential informant testified that on December 4, 1990, during a drug purchase at 244 E. Suttenfield Street, Spence told him "[t]hat this is Jimmy's spot", meaning that the home was Church's crackhouse. Tr. 332–33. Since Spence did not testify at the trial, Church was unable to cross-examine him concerning the alleged statement. Church maintains that this situation is one of plain error, because the statement "this is Jimmy's spot" was the evidence which convicted Church of Count Seven, conspiracy to open or maintain 244 E. Suttenfield Street for the purpose of distributing crack.

However, additional evidence supported the conviction on Count Seven. At the time of his arrest, Church had in his possession $583. Church's bundle of currency included two $20 bills that the confidential informant had used to buy drugs from Spence at the Suttenfield Street address. Tr. 202. Also, the confidential informant testified that he saw a portable television set at the Suttenfield Street address on December 4, 1990. While executing a search warrant the next day at the Leith Street address, the police recovered the same television set. Finally, at the Suttenfield Street address the police recovered a sawed-off shotgun and five shells. At the Leith Street address, the police recovered the same type of purple 16 gauge shotgun shells. Given the other evidence from which the jury could convict Church on Count Seven, the admission of the hearsay statement was not plain error.

2. Refreshing Recollection

 Following the undercover drug buys, Agent Cronin interviewed the confidential informant and made notes. Church contends that the district court erred, when at trial the confidential informant was allowed to refresh his recollection with Agent Cronin's notes pursuant to Fed. R.Evid. 612. Tr. 309–10. Church claims to have made a timely objection. However, the government maintains that Church made no objection and therefore waives the issue on appeal. The record indicates that the objection to the use of Agent Cronin's notes to refresh the confidential informant's recollection was made by counsel for Surry. Church did not object. Tr. 310. Church does not point to any understanding on the record with the trial judge as to whether an objection by counsel for one defendant applies to the other two defendants. *See United States v. Hawkins*, 905 F.2d 1489, 1493 n. 1 (11th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 707, 112 L.Ed.2d 696 (1991). Nevertheless, we will treat Surry's objection as preserving the issue for Church. *See Loose v. Offshore Navigation, Inc.*, 670 F.2d 493, 496–97 (5th Cir.1982) ("it would seem both dilatory and fatuous for each of the parties to stand in turn and voice its 'me-too.'").

Still, allowing Church the objection does not help him. As Church concedes, the district court has broad discretion regarding the use of evidence to refresh recollection. We find no error. *See United States v. Baratta*, 397 F.2d 215, 222 (2d Cir.), *cert. denied*, 393 U.S. 939, 89 S.Ct. 293, 21 L.Ed.2d 276 (1968); *United States v. DiMauro*, 614 F.Supp. 461, 466 (D.Me.1985).

AFFIRMED.