92 F.3d 1188
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
William HURT, Defendant-Appellant.
 No. 95-3953.
 United States Court of Appeals, Seventh Circuit.
 Argued July 9, 1996.
Decided July 19, 1996.
 
 Before CUMMINGS, KANNE and ROVNER, Circuit Judges.
 
 ORDER
 
 1
 William Hurt appeals his conviction for damaging by means of fire a railroad bridge used in interstate commerce, 18 U.S.C. § 844(i), on the grounds that he was denied due process when police coerced from Hurt's wife a statement implicating Hurt in the arson. We affirm.
 
 FACTS
 
 2
 On July 20, 1993, a Chicago and Northwestern Railway (now Union Pacific) bridge over the Chippewa River near Chippewa Falls, Wisconsin was damaged by arson. Although police suspected teenagers playing with fireworks had been involved, the case remained open and no suspects were charged. On February 25, 1994, a six-year-old girl remarked that her stepmother, Stacey Hagen-Hurt, had stated that Hagen-Hurt and the girl's father, William Hurt, had participated in the arson.[1]
 
 
 3
 Detective Sergeant Wayne Nehring and Special Agent Ronald Ebben visited Stacey Hagen-Hurt at the Hurts' home on March 8.[2] Hagen-Hurt, who police knew to be employed at Chippewa County Development Center, a sheltered workshop for developmentally disabled or mentally ill adults, has a full-scale IQ of 55, functions in the mild to moderately mentally retarded range, and appears to be easily led. In front of Hurt's brother and his girlfriend, Hagen-Hurt stated that Hurt had nothing to do with the arson. She indicated that she would prefer to wait until after Hurt's brother and his girlfriend left, and when they had done so, she told Nehring and Ebben that she had seen Hurt start the fire.
 
 
 4
 On March 9, Nehring and Ebben again visited Hagen-Hurt at home. Her father-in-law was present during the visit. Although Hagen-Hurt then stated that Hurt had not started the fire, when the officers asked her if she had lied the previous day about seeing Hurt start the fire, she burst into tears and said that her previous assertions had been true and that Hurt had started the fire. The officers asked Hagen-Hurt to come to the police station the next day and videotape the statement. Hagen-Hurt agreed but stated she was afraid of going to jail.[3]
 
 
 5
 On March 10, Hagen-Hurt's statement was videotaped at the police station. The transcript of that interview is attached to the appellant's brief, and the videotape itself is part of the record on appeal. Although she stated at one point that "we burned the bridge," the gist of her statement was that she had followed Hurt and watched him start a fire on the bridge. At the beginning of the interview, Ebben assured Hagen-Hurt that, although she had expressed some concern about going to jail, she was not going to be arrested for anything. Hagen-Hurt asserted that she believed Ebben's assurances. Hagen-Hurt has never been charged with this crime.
 
 
 6
 Prior to trial Hurt moved to suppress Hagen-Hurt's statements. The district court adopted the magistrate judge's recommendation that the motion be denied. Hurt was found guilty after a jury trial and sentenced to 63 months imprisonment and restitution; the sole issue on appeal is whether the district court erroneously denied the motion to suppress.
 
 STANDARD OF REVIEW
 
 7
 This court reviews motions to suppress evidence under a clear error standard. United States v. Tilmon, 19 F.3d 1221, 1223 (7th Cir.1994). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." Id. at 1224. Legal determinations necessary to resolve the motion are subject to de novo review. Thompson v. Keohane, 116 S.Ct. 457, 465 (1995).
 
 ARGUMENT
 
 8
 William Hurt claims that his right to due process was violated because Hagen-Hurt's statement, taken in violation of her Fifth Amendment rights, was introduced at his trial. He avers that in light of his wife's below-normal mental capacity and the fact that she was never given Miranda warnings, the government impermissibly coerced her videotaped statement. Voluntariness is a legal question requiring plenary review. Miller v. Fenton, 474 U.S. 104, 110 (1985).
 
 
 9
 Generally, a defendant does not have standing to complain about violations of the rights of third parties. United States v. Chiavola, 744 F.2d 1271, 1273 (7th Cir.1984); United States ex rel. Cunningham v. DeRobertis, 719 F.2d 892, 895 (7th Cir.1983). A violation of a non-defendant's Fifth Amendment rights may constitute a violation of the defendant's right to a fair trial, however, "when the government seeks a conviction through use of evidence obtained by extreme coercion or torture." Chiavola, 744 F.2d at 1273; see also United States v. Merkt, 794 F.2d 950, 961-62 (5th Cir.1986), cert. denied, 480 U.S. 946 (1987); LaFrance v. Bohlinger, 499 F.2d 29, 34 (1st Cir.1974); Bradford v. Johnson, 476 F.2d 66 (6th Cir.1973) (per curiam), aff'g 354 F.Supp. 1331 (E.D.Mich.1972). The ultimate issue is whether the government's investigative methods resulted in an fundamentally unfair trial. Chiavola, 744 F.2d at 1273.
 
 
 10
 There is no indication that Hurt's trial was unfair because of the introduction of this statement. First, the Chiavola standard of "extreme coercion or torture" is not met in this case, even considering Hagen-Hurt's diminished mental capacity. "This Court has long held that certain interrogation techniques, either in isolation or as applied to the unique characteristics of a particular suspect, are so offensive to a civilized system of justice that they must be condemned under the Due Process Clause of the Fourteenth Amendment." Miller, 474 U.S. at 109. The interviews of Hagen-Hurt, however, simply do not compare to the type of extreme treatment previously found to constitute a due process violation. "Faced with statements extracted by beatings and other forms of physical and psychological torture, the Court held that confessions procured by means 'revolting to the sense of justice' could not be used to secure a conviction." Id. The district court found that Hagen-Hurt was not treated in any improper way. She was asked to come to the police station and make a statement. She was not physically or mentally abused. The statement was videotaped; a review of the tape shows that Hagen-Hurt looked nervous, but not unduly upset. She was provided with a canned drink; she was told that she would not be placed under arrest and that she could stop the interview at any time; and the interview lasted approximately twenty minutes. Cf. Bradford, 354 F.Supp. at 1332-33, 1336 (trial fundamentally unfair where witness questioned for 24 hours without food, water, or sleep, physically abused, taunted with racial epithets, and threatened by prosecutor with arrest of his wife and removal of his children); Wilcox v. Ford, 813 F.2d 1140, 1149 (11th Cir.) (no fundamentally unfair trial warranting habeas relief where one witness told he would be held indefinitely and they would "fry his ass," another was threatened with murder charges and lynching and had words put in his mouth, and a third was interrogated for over eight hours with no food or water and threatened with the electric chair), cert. denied, 813 F.2d 1140 (1987).
 
 
 11
 The fact that Hagen-Hurt possesses a below-normal mental capacity does not change this result. The question is whether the person's will "was overborne at the time he confessed." United States v. Hocking, 860 F.2d 769, 774 (7th Cir.1988) (citation omitted). "We look both to 'the characteristics of the accused and the details of the interrogation' in determining whether a reasonable person would feel coerced." United States v. Montgomery, 14 F.3d 1189, 1194 (7th Cir.1994), and consider such factors as age, lack of education or low intelligence, lack of advice about constitutional rights, length of detention, repeated or prolonged nature of questioning, and the use of physical punishment. Id. at 1194-95; see also United States v. Buckley, 4 F.3d 552, 560 (7th Cir.1993), cert. denied, 114 S.Ct. 1084 (1994); United States v. Church, 970 F.2d 401, 404 (7th Cir.1992), cert. denied, 506 U.S. 1065 (1993). This court has previously applied a balancing test to claims of an impaired mental state. In United States v. Sablotny, 21 F.3d 747, 752 (7th Cir.1994), a sixty-two-year-old woman claimed to be sensitive to coercion on account of her age. The court held:
 
 
 12
 The question is whether [the officers] should reasonably have known that Ms. Sablotny was unusually susceptible to psychological pressure. If mental impairment of whatever kind should have reasonably been apparent to the interrogators, special care should have been exercised, and a lesser quantum of coercion would render the confession involuntary.
 
 
 13
 See also United States v. Haddon, 927 F.2d 942, 946 (7th Cir.1991) ("when the interrogating officers reasonably should have known that a suspect is under the influence of drugs or alcohol, a lesser quantum of coercion may be sufficient to call into question the voluntariness of the confession."); cf. Colorado v. Connelly, 479 U.S. 157, 164-65 (1986) (suspect's mental condition not dispositive of voluntariness issue apart from improper police coercion).
 
 
 14
 Here, the officers knew that Hagen-Hurt did not possess ordinary intelligence at the time they took her statements, although they did not have the testing results and evaluations that have since been added to the record. According to the district court, however, she was not subjected to improper interrogation techniques designed to take advantage of her mental capacity; the magistrate judge noted that the officers treated Hagen-Hurt "gingerly." The videotape corroborates the magistrate judge's and the district court's findings, which thus cannot be considered clearly erroneous. Although "[t]his court has cautioned that a noncustodial interrogation might possibly in some situations, by virtue of some special circumstances, be characterized as one where the behavior of ... law enforcement officials was such as to overbear [the witness'] will to resist and bring about confessions not freely self-determined," Haddon, 927 F.2d at 946 (citations and internal quotations omitted), this is not such a case.
 
 
 15
 Hurt also claims that Hagen-Hurt's rights were violated when she was not given any Miranda warnings, asserting that such warnings were required because the officers should have known that Hagen-Hurt was also a suspect in light of the information received from Hurt's daughter. Miranda warnings are due only when a suspect is "in custody." Thompson v. Keohane, 116 S.Ct. 457, 460 (1995). An "in custody" determination is a mixed question of law and fact deserving independent review. Id. at 465. Two inquiries are essential to this determination: what were the circumstances surrounding the interrogation, and given those circumstances, would a reasonable person have felt that she was not at liberty to terminate the interrogation and leave. Id. at 465. After answering these questions, the court determines whether "there was a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." Id. Further, an officer's subjective but undisclosed view that a person is a suspect is irrelevant to the determination of whether the person is in custody, Stansbury v. California, 114 S.Ct. 1526, 1527 (1994) (per curiam), and the fact that an interview takes place at a police station is not determinative, Oregon v. Mathiason, 429 U.S. 492, 495 (1977) (per curiam).
 
 
 16
 Under this circuit's caselaw, it is apparent that Hagen-Hurt was not in custody and thus no Miranda warnings were necessary. In United States v. Jones, 21 F.3d 165, 170 (7th Cir.1994), this court determined that a suspect was not subjected to restraints sufficient to invoke Miranda where he voluntarily agreed to be driven by officers to police headquarters, remained unhandcuffed, was questioned by two or three officers in an unlocked room, and was informed that he was not under arrest or in custody and was free to leave. See also United States v. Fazio, 914 F.2d 950, 955-56 (7th Cir.1990) (suspect who testified he felt coerced not "in custody" where he voluntarily agreed to meet police at municipal building, was repeatedly informed he was not under arrest, and he stated that he wanted to cooperate). In comparison, Hagen-Hurt appeared at the station on her own and was assured that she was not going to be arrested and could stop the interview at any time. Further, Hagen-Hurt was never treated as a suspect and in fact has never been charged with or prosecuted for the arson.
 
 CONCLUSION
 
 17
 The denial of Hurt's motion to suppress his wife's statements was not clearly erroneous. Hagen-Hurt's statement was not coerced and she was not entitled to Miranda warnings, so there is no basis for Hurt to assert a violation of her rights as a denial his right to due process. The judgment of the district court is AFFIRMED.
 
 
 
 [1]
 William and Stacey were not married at the time of the arson; they were married on December 7, 1993. No issues of marital privilege are raised in this appeal
 
 
 [2]
 Hurt was in jail at the time because his parole had been revoked in December 1993. Nehring and Ebben visited Hurt at the jail the same day
 
 
 [3]
 Hurt asserts that the officers ordered Hagen-Hurt to come to the station and said that if she did not they would put her in jail. The district court found that the officers requested rather than ordered Hagen-Hurt to visit the station