**UNITED STATES of America, Plaintiff,**

v.

**Miguel Angelo ESPINOZA, Defendant.**

No. 00–CR–0073.

United States District Court, E.D. Wisconsin.

July 13, 2000.

Mario F. Gonzales, Assistant United States Attorney, U.S. Department of Justice, Milwaukee, WI, for plaintiff.

John A. Cabranes, Attorney at Law, Hartig, Bjelajac, Cabranes & Koenen, Racine, WI, for defendant.

## DECISION AND ORDER

ADELMAN, District Judge.

Before me is a Recommendation by Magistrate Judge Patricia J. Gorence, proposing findings of fact and recommending that Miguel Angelo Espinoza's motion to suppress physical evidence be granted. The government filed timely objections to the Recommendation and Espinoza responded. Having reviewed the Recommendation and objections de novo, I see no reason to depart from the factual and legal determinations suggested by Magistrate Judge Gorence. Therefore, I will briefly

respond to the objections before adopting the Recommendation in full.

## I. SUMMARY OF APPLICABLE LAW AND MAGISTRATE JUDGE'S DECISION

In *Wilson v. Arkansas,* 514 U.S. 927, 929, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995), the Supreme Court held that the common-law "knock and announce" principle forms part of the reasonableness inquiry under the Fourth Amendment. The court rested its decision in part on the important interests served by the principle, which include giving people the opportunity to comply with the law before being subjected to a forced entry into their dwellings and avoiding the destruction of property occasioned by forcible entry. *Id.* at 930–32, 115 S.Ct. 1914. In *Richards v. Wisconsin,* 520 U.S. 385, 393 n. 5, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997) (citation omitted), the court identified another important interest served by the principle:

> Additionally, when police enter a residence without announcing their presence, the residents are not given any opportunity to prepare themselves for such an entry.... [M]ost search warrants are executed during the late night and early morning hours. The brief interlude between announcement and entry with a warrant may be the opportunity that an individual has to pull on clothes or get out of bed.

▮▮▮ The knock and announce principle generally requires police officers to knock and announce their presence and wait a reasonable time before breaking into a dwelling unless there are exigent circumstances. *United States v. Jones,* 208 F.3d 603, 609 (7th Cir.2000); *see* 18 U.S.C. § 3109. If, after knocking and announcing, the officers are refused admittance they may forcefully enter. The phrase "refused admittance" is not restricted to an affirmative refusal. *Jones,* 208 F.3d at 609. It includes circumstances from which a refusal may be inferred. A refusal may be inferred from a failure to acknowledge the officer's presence or open the door after a reasonable period of time. *Id.* at 610.

In *Jones,* the Seventh Circuit's most recent pronouncement on the issue, the court declined to adopt a bright-line rule and said that the period of time that officers must wait before forcibly entering depends on what is reasonable under the circumstances of the particular case. *Id.* The court there held that a wait of from five to thirteen seconds after knocking and announcing was reasonable. The court justified its ruling by noting that before entering the officers had specific information that the defendant had a gun, that he was a dangerous felon with a lengthy criminal record and that the quantity of drugs possessed by the defendant was such that he could destroy them in a short time. *Id.* In the present case the magistrate judge concluded that the a wait of five seconds was unreasonable largely because of the complete absence of all the factors on which the reasonableness determination in *Jones* rested. Here, the officers had no information that the individual was armed, dangerous or had a prior record, and they knew that the quantity of marijuana in the residence was too large to be quickly disposed.

## II. GOVERNMENT OBJECTIONS

The government raises several objections to the magistrate judge's conclusion. First, it argues that "the officers executing the search warrant knew that drugs were present within the residence and testified that common sense indicates that firearms are likely to be present." (Gov't's Obj. at 7.) It contends that "requiring a longer waiting period would put officers executing search warrants at undue risk as it would allow a defendant the opportunity to arm himself or destroy valuable evidence." (*Id.*) In *Richards,* however, the Supreme Court rejected virtually identical arguments: i.e., that a generalized connection between drugs and safety or an assumption that drugs could easily be destroyed were reasons for eliminating the knock

and announce rule in drug cases. The Court said:

> [W]hile drug investigation frequently does pose special risks to officer safety and the preservation of evidence, not every drug investigation will pose these risks to a substantial degree .... [t]he police could know that the drugs being searched for were of a type or in a location that made them impossible to destroy quickly. In those situations, the asserted governmental interests in preserving evidence and maintaining safety may not outweigh the individual privacy interests intruded upon by no-knock entry.

*Richards,* 520 U.S. at 393, 117 S.Ct. 1416 (footnote omitted).

■ The present case presents precisely the situation hypothesized in *Richards.* Here, there was no indication that execution of the warrant posed special risks to the officers' safety. Further, at least nine police officers were on the scene to insure that the matter be handled safely. Additionally, the drugs sought were "impossible to destroy quickly" because they consisted of fifty or sixty pounds of marijuana. Thus, as in *Richards,* the government's objection, based as it is on the notion of a general connection between drugs and arms and on the general assumption that drugs can be destroyed quickly, must be rejected.

Second, the government argues that although the magistrate judge stated that she was following Seventh Circuit precedent and not adopting a bright-line rule, she cited "a series of cases in which five seconds appears to be the rule." (Gov't's Obj. at 7.) The magistrate judge, however, clearly did not adopt a bright-line rule. Rather, she reached her conclusion, as the Seventh Circuit directed, by analyzing the particular circumstances of the case and comparing them to the particular facts of other cases. She noted that unlike *Jones* the officers here had no information that the flat was occupied by a dangerous felon, that a weapon was present or that destruction of evidence was a possibility.

The magistrate judge further noted that, unlike *United States v. Markling,* 7 F.3d 1309 (7th Cir.1993), where a seven second wait was held to be reasonable, the officers here did not have information that the defendant was "extremely paranoid" and would flush his drugs down the toilet. She also mentioned that in *Markling* the defendant was in a small motel room where he could hear a knock on the door and respond within a few seconds. By contrast, in the present case the targeted property was not a motel room but the lower flat of a duplex, which contained a number of rooms. Moreover, the warrant was executed at midnight at a time when many people are sleeping. In such circumstances a resident could easily take more than five seconds to get dressed much less answer the door. The magistrate judge thus based her conclusion that a wait of five seconds was unreasonable not on a bright-line rule but on the particular circumstances of the case before her, and the government's objection on this score must be rejected.

Third, the government appears to object to the magistrate judge's proposed finding of fact that five seconds elapsed before the forcible entry, asserting: "The magistrate's finding's [sic] that only five seconds elapsed before entry does not take into consideration the testimony of the witnesses or the fact that two doors were breached." (Gov't's Obj. at 8.) There are two problems with this objection.

■ First, the parties stipulated that Investigator Bauer waited five seconds and broke down the front door. (Recomm. at 4.) The time line the government attaches to its objections even indicates that only five seconds elapsed before the outer door was breached. (Gov't's Obj.App. 1.) Second, the only time period relevant to the question of whether the officers acted reasonably, i.e., waited long enough before forcibly entering, is the five seconds that elapsed before they broke the outer door. The Seventh Circuit has determined that the knock and announce rule applies per

dwelling not per door. *United States v. Bragg,* 138 F.3d 1194, 1195 (7th Cir.1998). In *Bragg* the court stated:

> Section 3109 does not say whether its rule applies per dwelling or per door, but two considerations persuade us that the former reading is correct. The first is the function of the statute, which is to afford the occupant notice so that he may open the door peaceably and prevent needless destruction of property, as well as to avert the potentially violent confrontation that could ensue if the occupant mistakes the police for invading criminals. So the statute requires the officer to give "notice of his authority and purpose". If the officer "is refused admittance"—and failure to answer the door is a form of refusal—then the door may be broken to execute the warrant. Notice tells the occupants who is at the door; the opportunity to open the door in response enables the occupants to avert damage to their dwelling. One notice suffices no matter how may doors the building has.

*Id.* at 1195 (citations omitted). Because under *Bragg* the knock and announce rule applies per dwelling rather than per door, the only time period that matters regarding whether the officers waited a reasonable time after knocking and announcing is the period before they broke into the dwelling. It makes no difference that after breaking into the dwelling the officers expended additional time breaking into the lower flat. The government's assertion that the officers waited more than five seconds therefore must be rejected.

Fourth, the government asserts that even if the magistrate judge correctly concluded that the officers violated the knock and announce requirement of the Fourth Amendment, the sanction of suppression is too severe a penalty to impose. (Gov't's Obj. at 10.) According to the government, the evidence "could be essential to the conviction of a criminal, while the violation of the Fourth Amendment ... might have imposed a cost on the criminal that was trivial in relation to the social cost of allowing a guilty criminal to walk." (Gov't's Obj. at 9.)

The government argues a point left open by the Court in *Wilson.* In *Wilson* the government argued that exclusion is not a constitutionally compelled remedy where the unreasonableness of a search stems from the failure of announcement. Analogizing to the "independent source" doctrine applied in *Segura v. United States,* 468 U.S. 796, 805, 813–16, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984), and the "inevitable discovery" rule adopted in *Nix v. Williams,* 467 U.S. 431, 440–48, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984), the government argued that any evidence seized after an unreasonable unannounced entry is causally disconnected from the constitutional violation and that exclusion goes beyond the goal of precluding any benefit to the government flowing from the constitutional violation. *See Wilson,* 514 U.S. at 937 n. 4, 115 S.Ct. 1914. Because the issue was not properly before the court, however, the Supreme Court declined to address it. *Id.*[1]

Since *Wilson,* however, a number of circuits have squarely addressed and rejected the government's argument. In *United States v. Marts,* 986 F.2d 1216, 1219 (1993) (footnotes omitted), the Eighth Circuit held that a violation of the knock and announce rule was a sufficiently serious invasion of a constitutional right to warrant invocation of the exclusionary rule:

> The government's second basis for arguing that the exclusionary rule should not be applied is that it results in the unreasonable suppression of highly probative and reliable evidence. The government urges that, even if the officers had waited an additional period of time, the exact same search would have been conducted and the exact same evidence would have been seized. Thus, this "technical violation" should not exact the

1. The Supreme Court also declined to address the question in *United States v. Ramirez,* 523 U.S. 65, 72 n. 3, 118 S.Ct. 992, 140 L.Ed.2d 191 (1998).

full remedy provided by the law. Long-standing constitutional principles regarding unlawful search and seizure bar the government's use of the fruits of an unlawful search simply because the officers "would have found it anyway." The fact that the evidence is so probative that the government cannot prosecute its case without it is no more persuasive in excusing unlawful conduct. The consequence of this ruling, that allegedly guilty defendants will not be fully prosecuted, is indeed offensive to our concept of the criminal justice system. However, the remedial objectives of the exclusionary rule are well served here, and the rule was appropriately applied by the district court.

The Sixth Circuit also addressed the issue in a case with facts strikingly similar to those in the present case. In *United States v. Dice*, 200 F.3d 978, 982 (6th Cir. 2000), that court addressed the government's argument as follows:

The Government essentially seeks a rule—derivative of the "independent source doctrine"—that when police officers have a valid warrant, and make a proper knock and announcement, but fail to wait a reasonable time before forcing their way into a residence, the exclusionary rule should not apply to evidence thereafter seized. We can not accept this position because it defies clear precedent in two critical areas of Fourth Amendment law.

The court concluded that adoption of the government's position would emasculate both the knock and announce rule and the independent source rule. According to the Sixth Circuit, the requirement that officers wait a reasonable period of time before breaking into dwellings is a crucial element of the knock and announce rule and removing the exclusionary bar from violations of the rule would "in one swift move gut the constitution's regulation of *how* officers execute such warrants." *Id.* at 986. In the court's view, the essence of the independent source rule is the government's showing that evidence was discovered through sources wholly independent

of any constitutional violation. *Id.* at 984. Thus, the court concluded that in cases like the present one where there is but one entry and one search—both illegal because of the knock and announce violation—the evidence seized is clearly not the fruit of a second search independent of the constitutional violation. As for the inevitable discovery doctrine, the Sixth Circuit indicated that the prosecution "can not make such an argument." *Id.* at 986.

To prevail under that doctrine, the government must show that the evidence inevitably would have been obtained from lawful sources in the absence of the illegal discovery. This requires the government to proffer clear evidence of an independent, untainted investigation that inevitably would have uncovered the same evidence as that discovered through the illegal search. Here, the government has not done this. In fact, the record evinces that there was only one investigation into Dice's activity, and that investigation culminated in the illegal entry we are now scrutinizing.

*Id.* at 986–87 (internal quotation marks and citations omitted).

Thus the Sixth Circuit, like the Eighth, forcefully rejected the argument the government now presents. Further, while not directly addressing the question, the Tenth Circuit affirmed a trial court's suppression of evidence obtained in violation of the knock and announce rule. *See United States v. Moore*, 91 F.3d 96, 99 (10th Cir. 1996).

■ Moreover, the Seventh Circuit has articulated a general principle underlying both the inevitable discovery exception to the exclusionary rule and the related doctrine of harmless error, which principle suggests that the Seventh Circuit would not permit the admission of evidence seized after a knock and announce violation of the type that occurred in this case. While recognizing that the discovery of evidence inside a house would likely be inevitable once the police arrive with a warrant, *United States v. Jones*, 149 F.3d

715, 717 (7th Cir.1998), the Seventh Circuit indicates that a defendant is entitled to the remedy of exclusion if he can show that the violation of his constitutional right caused "harm [to] the interest (whether in privacy or in a fair trial) that the rights protect," *United States v. Stefonek,* 179 F.3d 1030, 1036 (7th Cir.1999), *cert. denied,* —— U.S. ——, 120 S.Ct. 1177, 145 L.Ed.2d 1085 (2000). Applying the foregoing principle articulated by Chief Judge Richard A. Posner to the present case leads to the conclusion that the evidence seized is barred by the exclusionary rule. The officers violated defendant's Fourth Amendment right to be free of an improperly announced entry into his residence. As discussed earlier, the interests protected by this right are the interest in being given an opportunity to comply with the law, the interest in not having property unnecessarily destroyed by the government, and the interest in having an opportunity to prepare for an entry by strangers into a residence. *Richards,* 520 U.S. at 393 n. 5, 117 S.Ct. 1416. These interests are all aspects of "the interest ... in privacy ... that the rights protect." *Stefonek,* 179 F.3d at 1036. In the present case the officers harmed this interest, thus, under the principle articulated in *Stefonek,* the defendant is entitled to the remedy of exclusion.

■ Finally, the government's position that the inevitable discovery doctrine trumps the exclusionary rule in cases of knock and announce violations must be rejected based on the purpose of the exclusionary rule itself as articulated by the Supreme Court. In *Stone v. Powell,* 428 U.S. 465, 486, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), the Court made clear that "[t]he primary justification for the exclusionary rule then is the deterrence of police conduct that violates Fourth Amendment rights." If the exclusionary rule is unavailable as a remedy for knock and announce violations it is hard to see how

such violations will be deterred. There would appear to be no other effective deterrent. *See* Steven P. Grossman, *The Doctrine of Inevitable Discovery: A Plea for Reasonable Limitations,* 92 Dick. L.Rev. 313, 361 (1988) (stating that when the very purpose of the constitutional right violated would be defeated by application of the doctrine of inevitable discovery, even the near certainty of subsequent discovery should not result in the admissibility of the challenged evidence). Thus, the government's objection to the magistrate judge's decision based on the inevitable discovery doctrine must be rejected.

**NOW, THEREFORE, IT IS ORDERED** that the proposed findings of fact and recommended conclusion in Magistrate Judge Gorence's Recommendation are **ADOPTED** and the defendant's motion to suppress is hereby **GRANTED.**

### MAGISTRATE JUDGE'S RECOMMENDATION TO THE HONORABLE LYNN ADELMAN

GORENCE, United States Magistrate Judge.

#### NATURE OF CASE

On March 29, 2000, United States Magistrate Judge William E. Callahan Jr. issued a criminal complaint against defendant Miguel Angelo Espinoza, charging him with violating 21 U.S.C. § 841(a) by possessing with the intent to distribute in excess of 500 grams of cocaine. Thereafter, on April 11, 2000, a federal grand jury sitting in this district returned a one count indictment against the defendant charging him with such violation.[1]

On April 12, 2000, the defendant appeared for arraignment, entering a plea of not guilty. Pursuant to the pretrial scheduling order issued at that time, the defendant filed a motion to suppress physical evidence. The defendant seeks suppres-

---

1. The indictment does not specify the quantity of cocaine allegedly possessed by the defendant.

sion of physical evidence seized from his residence located at 410 12th Street, lower flat, Racine, Wisconsin. The evidence was seized pursuant to a "knock and announce" search warrant which was executed on March 27, 2000, at approximately 11:59 p.m. The defendant contends that his Fourth Amendment rights were violated by the execution of the search warrant because the officers did not adequately comply with the constitutional requirement that they knock and announce their presence before entering the residence.

Such motion was the subject of an evidentiary hearing conducted by the court on May 17, 2000. Investigator Thomas Bauer of the Racine County Sheriff's Department and Deputy Sheriff Brian Zimmermann of the Racine County Sheriff's Department testified on behalf of the government. James A. Ladwig, a police officer with the Town of Caledonia Police Department, who is currently assigned to the Racine County Metro Drug Unit as an investigator, and Zachary Wright, a citizen witness, were called as witnesses by the defendant. Based on the testimony and evidence, and the undisputed facts, and having considered the law as it applies to this court's factual findings, this court now sets forth its findings of fact and recommendation for the disposition of the defendant's suppression motion.

### Findings of Fact

Between 10:00 and 11:00 p.m. on March 27, 2000, a "knock and announce" search warrant for the lower unit of a duplex residence located at 410 12th Street, Racine, Wisconsin was issued by a Racine County judge. The search warrant was based upon the affidavit of James A. Ladwig, a police officer with the Town of Caledonia Police Department, who is currently assigned as to the Racine County Metro Drug Unit as an investigator.

The search warrant was based upon information received from a reliable confidential informant that an unnamed male Hispanic approximately 24–25 years old, 5'4" tall with a stocky build and black hair was dealing marijuana from his resi-

dence located at 410 (lower unit) 12th Street, Racine, Wisconsin. The confidential informant reported that, at such address and within the preceding 72 hours, he had observed the individual in possession of a large quantity of marijuana. The confidential informant also observed a large quantity of money and a scale. Investigator Ladwig averred in the warrant application that from his experience in drug investigations he knows search warrants often result in the discovery of items such as firearms, knives and other weapons possessed for the purpose of protecting controlled substances and protecting persons involved in the sale of controlled substances.

Following the issuance of the search warrant, Investigator Ladwig conducted a briefing session with officers participating in the execution of the warrant. The officers were advised that approximately 50 to 60 pounds of marijuana and a large quantity of cash would be found in the residence. It was unknown whether the subject living at the residence possessed any weapons. Investigator Ladwig, Investigator Thomas Bauer of the Racine County Sheriff's Department, Deputy Sheriff Brian Zimmermann of the Racine County Sheriff's Department each testified, that based upon their own experience, weapons of some sort are found in approximately 50% of those locations where warrants related to narcotics trafficking are executed.

Following the briefing session, a nine-member team of officers assigned to the S.W.A.T. unit assembled in the vicinity of the duplex residence at 410 12th Street, Racine, Wisconsin. Investigator Bauer, the lead member of the S.W.A.T. team, was assigned the responsibility of knocking and announcing the presence of the law enforcement officers. Also present were Investigator Ladwig and Deputy Sheriff Zimmermann who had the battering ram which was to be used, if necessary, to break down the door. The battering ram weighs 20 pounds and is two feet long.

At approximately 11:59 p.m. on March 27, 2000, after the members of the S.W.A.T. team were in position, Investigator Bauer knocked loudly on the exterior common front door to the duplex and announced "Sheriff's Department search warrant." The parties stipulated that Investigator Bauer waited five seconds and broke down the front door. They also stipulated that at the front door of the lower unit, the procedure was repeated at which point the officers entered the residence.

At the hearing, Investigator Bauer explained that after knocking on the exterior door and announcing the presence of the officers, he attempted to open that exterior door and found that the door was locked. Approximately five seconds after the knock and announcement, Deputy Sheriff Zimmermann broke down the front exterior door with a battering ram. The law enforcement officers stepped inside into a small vestibule which was approximately three feet wide.

Zachary Wright, who resides in the upper unit of the duplex, was in his bedroom watching television at the time the search warrant was executed. Mr. Wright had recently returned from work and was expecting company. He heard the knock at the front exterior door of the residence and began to walk from his bedroom to the front door of his apartment. His hand was on the doorknob of the door to his apartment when he heard the sound of the battering ram and the officers entering the exterior common door. Mr. Wright did not hear the officers say "Sheriff's Department search warrant."

Mr. Wright opened the door to his apartment. A law enforcement officer shined his flashlight in Mr. Wright's face, told him to put his arms up and to lie down. Mr. Wright was surprised. He was told three times to shut the door to his apartment. He complied with this request. Mr. Wright testified that he did not hear the officers knock and announce their presence at the lower unit.

Investigators Bauer and Zimmermann saw persons coming down the stairway from the upper unit. That matter was addressed by other law enforcement officers. Investigator Bauer focused his attention on the door to the lower flat. He knocked on the door, and announced, "Sheriff's Department search warrant." After approximately five seconds, Investigator Bauer kicked the door to the lower unit in an attempt to open it. The door did not yield. Investigator Bauer fractured a bone in his foot.

Investigator Bauer stepped back and asked Deputy Sheriff Zimmermann to ram the door to the lower unit. Due to the relatively small size of the vestibule and the bulk of Investigator Bauer and Deputy Sheriff Zimmermann in their S.W.A.T. uniforms, these two officers were unable to pass each other. Rather, Investigator Bauer stepped back to allow Deputy Sheriff Zimmermann to have access to the door leading to the lower unit. Deputy Zimmermann testified that approximately five to ten seconds elapsed before he was able to ram the door.

Deputy Sheriff Zimmerman testified that the light was on in the vestibule. When he was outside the lower unit, he was not aware whether the light was on inside that unit. He neither saw nor heard any movement.

Upon hitting the door with the battering ram, the door to the lower unit opened approximately six inches and then closed. Both Investigator Bauer and Deputy Sheriff Zimmermann observed that someone was present behind the door. Investigator Bauer saw the fleshy part of an arm and black hair. He told Deputy Sheriff Zimmermann that someone was holding the door. Deputy Sheriff Zimmermann was also able to see someone's arm. Investigator Bauer and Deputy Sheriff Zimmermann then put their weight on the door and were able to open it.

When they entered the lower unit, Investigator Bauer and Deputy Sheriff Zimmermann observed a male, defendant Miguel Angelo Espinoza, who had been holding the door. Investigator Bauer tes-

**1024**

tified that approximately 20 seconds elapsed from the time he announced the presence of the law enforcement officers until the defendant was subdued.

Once inside the residence, Deputy Sheriff Zimmermann observed that the lights were on. He also observed that the door had a deadbolt lock, but he did not observe any signs of a barricade. A search of the residence subsequently revealed a large quantity of drugs. No one else was found inside the lower unit. Both Investigator Bauer and Deputy Sheriff Zimmermann testified that standard operating procedure when executing a "knock and announce warrant," is to wait five seconds after knocking and announcing before attempting to enter the subject residence.

After the defendant was taken to the headquarters for processing, the law enforcement officers learned that the defendant does not know English. They were not previously aware of such fact.

### Analysis

The knock and announce statute, 18 U.S.C. § 3109, provides as follows:

> The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.

Compliance with the requirements of the statute is not required in the face of exigent circumstances. *See Sabbath v. United States,* 391 U.S. 585, 591, 88 S.Ct. 1755, 20 L.Ed.2d 828 (1968); *United States v. Buckley,* 4 F.3d 552, 558 (7th Cir.1993), *cert. denied,* 510 U.S. 1124, 114 S.Ct. 1084, 127 L.Ed.2d 400 (1994). In *Buckley,* the Court of Appeals for the Seventh Circuit observed that "[i]n the normal execution of a search warrant, the Fourth Amendment and more specifically 18 U.S.C. § 3109 requires officers to knock and announce their presence before entering a dwelling." *Id.* at 558; *see also, United States v. Jones,* 208 F.3d 603, 609 (7th Cir.2000).

In *Wilson v. Arkansas,* 514 U.S. 927, 934, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995), the Supreme Court held that the Fourth Amendment incorporates the common law requirement that police officers entering a dwelling must knock on the door and announce their identity and purpose before attempting a forcible entry. However, the Court also recognized that the "flexible requirement of reasonableness should not be read to mandate a rigid rule of announcement that ignores countervailing law enforcement interests." *Id.* at 934, 115 S.Ct. 1914. Thus, the Court stated that it left "to the lower courts the task of determining the circumstances under which an unannounced entry is reasonable under the Fourth Amendment." *Id.* at 936, 115 S.Ct. 1914.

In *Wilson,* the court recognized that the knock and announce requirement could give way "under circumstances presenting a threat of physical violence" or "where police officers have reason to believe that evidence would be destroyed if advance notice were given." *Id.* at 937, 115 S.Ct. 1914. Exigent circumstances exist when a suspect's awareness of the search would increase the danger to police officers or others, or when an officer must act quickly to prevent the destruction of evidence. *See United States v. Singer,* 943 F.2d 758, 762 (7th Cir.1991). If in the officers' reasonable judgment knocking or announcing their presence would jeopardize the recovery of important evidence or heighten the risks to their personal safety, the officers may enter without alerting the occupants. *Buckley,* 4 F.3d at 558.

In *Richards v. Wisconsin,* 520 U.S. 385, 395, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997), the Court held that the Fourth Amendment does not permit a blanket exception to the knock-and-announce requirement for felony drug investigations. Rather, in each case it is the duty of a court confronted with the question to determine whether the facts and circumstances of the particular entry justify dispensing with the knock-and-an-

nounce requirement. *Id.* at 394, 117 S.Ct. 1416. "To justify a 'no-knock entry' the police must have reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile or that it would inhibit the investigation of a crime by, for example, allowing the destruction of evidence." *Id.* The Court held that the reasonable suspicion standard strikes the appropriate balance between the legitimate law enforcement concerns at issue in the execution of search warrants and the individual privacy interests affected by no-knock entries. *Id.* at 394–395, 117 S.Ct. 1416. The Court stated "[t]his showing is not high, but the police should be required to make it whenever the reasonableness of a no-knock entry is challenged." *Id.* at 395, 117 S.Ct. 1416.

Section 3109 has been construed as a limitation on—rather than an extension of—the authority of federal officers to use force in the execution of a warrant. *United States v. Salter,* 815 F.2d 1150, 1152 (7th Cir.1987). Read with this judicial gloss, § 3109 prohibits federal officers when executing search warrants from "intruding" into a dwelling until they have announced their authority and purpose and have been refused admittance. *Id.*

The section does not specify how long law enforcement officers must wait before they are constructively denied admittance and are entitled to forcibly enter the premises. The time that § 3109 requires officers to wait before they may construe no response as a denial of admittance depends largely on the factual determinations made by the trial court. *See United States v. McConney,* 728 F.2d 1195, 1206 (9th Cir.), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984); *United States v. Davis,* 617 F.2d 677, 695 (D.C.Cir.1979), *cert. denied,* 445 U.S. 967, 100 S.Ct. 1659, 64 L.Ed.2d 244 (1980) (no violation of § 3109 where police knocked, announced themselves, and entered after 15 to 30 seconds passed without response; no exigent circumstances raised).

As recently stated by the court of appeals for this circuit in *Jones,* 208 F.3d at 609: "If no exigent circumstances exist and the officers are 'refused admittance,' they may forcefully enter." The court stated that the phrase 'refused admittance,' is not restricted to an affirmative refusal. Rather, it includes "circumstances that infer a refusal." *Id.* (citing *United States v. Bonner,* 874 F.2d 822, 824 [D.C.Cir.1989] ); *see also, United States v. Noreikis,* 481 F.2d 1177, 1180 (7th Cir. 1973), *vacated on other grounds in part,* and *cert. denied in part,* 415 U.S. 904, 94 S.Ct. 1398, 39 L.Ed.2d 461 (1974).

■ Although § 3109 requires notice in the form of an express announcement by officers of their purpose and authority for demanding admission, "the burden of making an express announcement is certainly slight." *Miller v. United States,* 357 U.S. 301, 309, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958). This requirement is grounded in the Fourth Amendment and serves several purposes: 1) it decreases the potential for violence; 2) it protects the privacy of the individual by minimizing the chance of forcible entry into the dwelling of the wrong person; and 3) it prevents the physical destruction of property by giving the occupant time to voluntarily admit the officers. *United States v. Ruminer,* 786 F.2d 381, 383 (10th Cir.1986) (citations omitted). The purpose of the knock and announce requirement is to give notice to the occupant of a premises which is the subject of a search warrant so as to avoid a forcible entry by law enforcement officers.

In *United States v. Jones,* 133 F.3d 358, 361 (5th Cir.1998), *cert. denied,* 523 U.S. 1144, 118 S.Ct. 1854, 140 L.Ed.2d 1102 (1998), the court addressed whether 15 to 20 seconds was a reasonable length of time under common law "knock and announce" rule for state officers to wait before entering defendant's apartment to search for cocaine after knocking and announcing their presence. The court declined to adopt a bright-line standard rule, but held that under the circumstances the officers

had waited long enough after knocking and announcing their presence. *Id.* at 361–62.

In its discussion of the issue, the court noted that generally a delay of five-seconds or less after knocking and announcing has been held a violation of 18 U.S.C. § 3109. *Id.* at 361 (citing *United States v. Moore,* 91 F.3d 96, 98 [10th Cir.1996]) [officers waited three seconds at most and the government failed even to allege that the officers harbored a concern for their safety]; *United States v. Lucht,* 18 F.3d 541, 550–51 [8th Cir.1994] [waiting three to five seconds before entering was not long enough]; *United States v. Rodriguez,* 663 F.Supp. 585, 587–88 [D.D.C.1987] [delay of three to five seconds was insufficient]; *United States v. Marts,* 986 F.2d 1216, 1217–18 [8th Cir.1993] [lapse of less than five seconds held not sufficient to infer refusal of admittance necessary to comply with § 3109]; *United States v. Nabors,* 901 F.2d 1351, 1355 [6th Cir.1990] [forced entry only seconds after announcing the officers' authority and purpose must be "carefully scrutinized"]; *United States v. Mendonsa,* 989 F.2d 366, 370 [9th Cir. 1993] [waiting three to five seconds was insufficient].

However, the court also noted that when officers have waited more than five seconds, the courts have generally held that there was no violation of § 3109. *Jones,* 133 F.3d at 361 (citing *United States v. Markling,* 7 F.3d 1309, 1318 [7th Cir.1993] [officers waited seven seconds before starting to try to knock the door down]; *United States v. Spriggs,* 996 F.2d 320, 322–23 [D.C.Cir.1993] [officers waited 15 seconds before attempting to enter]; *United States v. Ramos,* 923 F.2d 1346, 1355–56 [9th Cir.1991] [after two requests and 45 seconds]; *United States v. Myers,* 106 F.3d 936, 940 [10th Cir.] [agents waited ten seconds before battering the door down], *cert. denied,* 520 U.S. 1270, 117 S.Ct. 2446, 138 L.Ed.2d 205 (1997); *United States v.*

*Knapp,* 1 F.3d 1026, 1030–31 [10th Cir. 1993] [ten to 12 seconds was sufficient to wait]; *United States v. Gatewood,* 60 F.3d 248, 250 [6th Cir.1995] [no violation when officers waited about ten seconds between announcement and entry] ).[2]

In *Jones,* 208 F.3d at 609, the court of appeals for this circuit held that the officers could reasonably infer that the defendant's failure to acknowledge their presence or open the door was a refusal and that they were therefore justified in using force to enter. The court upheld the district court's finding that five to 13 seconds was a reasonable time to wait after knocking and announcing. *Id.* The court expressly declined to adopt any bright line test and stated that it believes "that the period of time that officers must wait before forcible entry is determined by what is reasonable under the circumstances of the particular case." *Id.* The court noted that in the case before it the district court was persuaded that five to 13 seconds was reasonable because the officers had information that the defendant was a dangerous felon in possession of a gun. *Id.* Additionally, it noted that to wait a lengthy period of time would give the defendant an opportunity to destroy the drug evidence. *Id.* The appellate court upheld such determinations. *Id.*

Applying the foregoing principles to the facts of this case, the court cannot conclude that the officers gave adequate notice and time to the occupant of the premises to avoid a forcible entry. It is undisputed that after knocking and announcing their presence, the law enforcement officers waited five seconds before they forcibly entered the defendant's residence. The officers had no information that the individual in the lower unit was armed or that the individual was dangerous. They expected to find a large quantity of marijuana on the premises which

---

**2.** In *United States v. Jenkins,* 175 F.3d 1208, 1214 (10th Cir.1999), the court stated that a police department's alleged policy of having officers wait ten seconds after knocking and announcing their presence before forcibly entering a residence would violate the constitutional knock and announce standard because compliance with Fourth Amendment reasonableness inquiry must be evaluated on a fact-dependent, case-by-case basis.

could not be disposed of quickly. No facts were elicited indicating that the officers had any information that their presence had been detected.

The court is mindful that the officers testified that they were concerned for their safety and that weapons are found in approximately half of the executions of drug search warrants. This testimony reflects legitimate concerns which are based on the "culture" surrounding drug dealing. While these concerns are not insignificant, the Supreme Court has rejected the concept of creating exceptions to the " 'knock and announce' rule based on the 'culture' surrounding a general category of criminal behavior." *Richards* 520 U.S. at 392, 117 S.Ct. 1416. The sole reliance on such generalized testimony would, in essence, be creating a blanket exception to the knock and announce rule.

The facts of this case are distinguishable from those in *Jones,* 208 F.3d at 609, where the entering officers had information that the defendant was a dangerous felon in possession of a gun. In addition, the officers were concerned about the destruction of the drug evidence, a concern not present in the instant case.

Likewise, the situation in *Markling,* 7 F.3d at 1312, is not comparable to the instant case. In *Markling,* law enforcement officers obtained a search warrant for the defendant's motel room to search for cocaine and other indicia of drug dealing. The officers had been told by a woman who had just bought drugs from the defendant that she thought the defendant was "extremely paranoid" and would flush any other drugs in the room down the toilet if he became suspicious. *Id.* at 1312.

About an hour later the search warrant was executed. *Id.* The officers yelled "Police, Search Warrant," and waited about seven seconds before breaking down the door. In upholding the district court's finding that under the circumstances the seven second wait was sufficient to comply with § 3109, the court noted that there was no noise coming from the room which would have made it difficult for the defen-

dant to hear their announcement, the motel room was small, and the officers were told that the defendant was likely to flush the cocaine down the toilet. *Id.* at 1318. The instant case clearly does not present analogous circumstances.

In sum, based upon careful consideration of the facts and circumstances of this case, this court concludes that the entry into the defendant's home five seconds after the officers knocked and announced their presence was not reasonable and violated the knock and announce requirement of the Fourth Amendment and § 3109. Accordingly, this court will recommend that the defendant's motion to suppress physical evidence seized from his residence on March 27, 2000, be granted.

## CONCLUSION

**NOW, THEREFORE, IT IS HEREBY RECOMMENDED** that the United States district judge enter an order **granting** defendant Espinoza's motion to suppress physical evidence.

Your attention is directed to 28 U.S.C. § 636(b)(1)(B) and (C), whereby written objections to the foregoing recommendation may be filed in duplicate with the clerk of court within ten days of the date of service of this recommendation. Failure to file a timely objection with the district court shall result in a waiver to your right to appeal.

May 24, 2000.